Case number 20-1067, Raed McCracken Jarrar, Petitioner v. National Labor Relations Board. Mr. Jarrar for the Petitioner, Mr. Sauter for the Respondent. All right, counsel for Petitioner. May it please the court, my name is Raed McCracken Jarrar and I am representing myself in this matter. Your Honours, as you were able to read in my briefs, this case is about a simple petition concerted protected activity by employers of Amnesty International USA, alarmed about the exploitation of labor of interns at the same organization. We all believed that interns should be paid for their labor because we cared about them, we cared about our own work, and because we also joined to protest what we all perceived to be a bad policy that led to racial injustice at the organization. The petition read, without pay, AIUSA internships are more available to students of higher socioeconomic status, which serves to limit racial socioeconomic diversity. As a person of color, of course, I cared about diversity and racial justice in the organization. In response to the petition, the employer made statements that were found to be in violation of the NLRA, first by the NLRB general counsel, then later by an administrative law judge. And although the employer initially filed two very limited exceptions to the judge's findings, the employer then agreed to a formal order and affirmative action order. Then the board unexpectedly stepped in, interrupted the settlement process, and rushed into issuing this order. So my case here is not just about the NLRB board reversing the administrative law judge's findings pertaining to my specific case, but it's also about how the order went so far to chip away at the protections of Section 7 of the NLRA, because according to the board, our actions exclusively advocated for non-employees and did not affect our own terms and conditions of employment. So what I'm trying to say here is that the board order is not dictum. This is not a one-off ruling that affects my individual case. It's a dangerous new precedent that will have lasting damage on workers' rights in the United States. On the one hand, the ruling puts an unfair burden on workers to make sure they can act in solidarity with anyone who works in the same workplace. And of course, the result will be creating a chilling factor that would dissuade an average worker from taking the risk of engaging in concerted activity in the future. So as you can see in my arguments, I have requested that this court vacate the NLRB board ruling, mainly because of two reasons. The first one is that the board went against the preponderance of evidence. There is a lot of evidence there that was found by the neutral fact finder, who's a federal administrative law judge. He interviewed the witnesses, he lived the case, listened to the audio recordings of the statements, and ruled that the statements by the employer violated the NLRA in four different ways. But more importantly, the fact that the board departed from Supreme Court precedent and from its own precedent without explanation is enough reason to send this case back to the NLRB board. The NLRB board ducked foundational case law without explaining why. Like for example, Peter K.A. Koller, one of the keystone foundational rulings by Judge Learned Hand, was not even mentioned once in the board's explanations to its departure. The board does not even attempt to explain its departure from the Supreme Court rulings pertaining to Section 7. At the end of the day, the board's primary rationale in overturning the administrative law judge's ruling was that our concerted activity was not protected by Section 7. According to the board itself, if they did not go as far as reaching the question on whether the employees engaged in activity under Section 7, that the case cannot be overturned. So that's why, even if this court will not go to the length of looking at the evidence, which I have put many reasons in my briefs for why this court should consider the evidence, because of the disagreement between the administrative law judge and the board, because of the ruling on whether or not the interns were employees, which is a pure question of law that this court should not give deference to the board on, and other reasons. But even if this court does not go down the route of looking into the merits of the evidence itself, only by sending back this ruling based on the Section 7 departure with no explanation would immediately result in overturning the board's decisions regarding my case. So I see that I am almost done with my time here. I just wanted to say that the dissenting board member, now Chairman McFarland, said in her dissenting opinion that, I'm quoting here, until today, it was clear that the National Labor Relations Act protected covered employees who joined together to help their co-workers, even if those workers were not covered themselves. And I think the Chairwoman is right, and your honors, today is the day that the court can undo the damage caused by the NLRB board's overreach and restore one of the most basic protections for U.S. workers. Thank you, Mr. Giroir. Let's hear for counsel for the board, and we will give you, I think it is three minutes on rebuttal. Good morning, your honors. Greg Sautter for the National Labor Relations Board. Your honors, this court will uphold the board dismissal order if the board unless it lacks any rational basis. Here, the board dismissed this case because it found that Margaret Hwang, the director of amnesty, her statements to amnesty staff and to Mr. Giroir did not violate the act in any respect. And in so doing, the board looked at all the circumstances surrounding Hwang's statement as it is required to do under its own law. Specifically, the board considered the fact that Ms. Hwang responded favorably when she was first approached about the question of paid internships at amnesty, that she immediately leveled with the employees and telling them that if there was a shift towards paid internships, there would likely be a reduction in the number of interns that amnesty could employ. Also, the fact that she was surprised and a little blindsided when the petition, when she received the petition, given that she had had what she felt was a productive talk with amnesty's employees, that she immediately raised the issue to the executive team, which was meeting that week in order to arrive at a decision on how to proceed and that the executive team actually decided to move its plans for paid internships up by a year. And then that when she announced the information, the news to her employees, she was met with a backlash that she completely did not expect. Based on those circumstances, the board examines the statements that Ms. Hwang made, statements that included saying that amnesty never discharged anyone for signing a petition, that she was embarrassed and disappointed that she didn't have the relationship with staff that she wished that she had or that she thought that she had, that it would have been very helpful to know about the petition ahead of time so that she could have worked with employees to understand why they were ultimately so frustrated and disappointed with the result. And also her suggestions as to how to proceed in the future so as not to be in the same situation of basically miscommunication that resulted in dismay by employees after what she thought was an attempt to address their concerns. In reviewing all of those circumstances and Ms. Hwang's statement in that context, the board found that reasonable employees sitting in Mr. Girard's position would not have found that those employees expressed anger or betrayal or any accusations of disloyalty or were threatening in nature, but rather that they expressed disappointment at how things had gone on, frustration at her failure to handle the situation in a way that would have prevented this kind of concern on the part of employees and attempts to prevent that kind of incidents from occurring again in the future. So the board came to this finding, as I said, in making, considering all of the circumstances, doing its due diligence as required under board law and under the act, and its finding that Ms. Hwang's statements didn't violate the act in any respect, we submit completely disposed of this case. Now, the board also considered the fact that the ALJ had decided, had found that interns were employees under the SLSA. And the board felt that it had to address that problem, that issue, because it felt that the ALJ had mistakenly come to that conclusion. And so what the board did was analyze the employment status of interns. However, before I go there, I would like to point out that all of Mr. Girard's challenges to that section of the board's decisions are either forfeited or waived. Mr. Girard, who was represented by an attorney before the board, should have raised those challenges to the board itself, rather than waiting until now to raise them to this court. He could have done so in cross exceptions, responding to amnesties exceptions to the ALJ's decision. He could have also done so in an answering brief to amnesties exceptions. He did actually file a motion to strike amnesties exceptions on procedural grounds. So he had counsel and counsel was clearly following the proceedings. However, he did not file any cross exceptions or an answering brief. And he also more significantly did not file a motion for reconsideration once the board issued its decision. And therefore, we respectfully submit that none of Mr. Girard's arguments are before the court. There is one that we concede is arguably for this court, and that is the issue whether interns could be considered job applicants. And that issue was mentioned, was raised by the general counsel in its exceptions to the board, and therefore was preserved. However, Mr. Girard did not make any argument on this particular issue. He just mentioned it in his opening brief. He did not cite to any case law. He did not cite to the record. And therefore, we submit that that argument is waived under Fox and other DC circuit law. So in summary, we have before this court, what is left is the 81 issue whether Ms. Huang's statement violated the act. And as I've just explained, the board reasonably found reasonably concluded that they did not. So based on that, and unless you have any other questions, I would, the board would respectfully request that this court enforce its dismissal order in full. All right. Thank you, counsel. Hearing no questions. Let me ask Mr. Girard if he would like the three minutes he preserved. Yes, Your Honor. Thank you. And as I have explained in my petition and reply brief to the respondents brief, on the one hand, I did preserve all of my claims except for one. And in my brief, I speak about all of the details of where these issues were raised, because the standard of review for this court is whether the critical question, sorry, whether the board received adequate notice of the basis of the objection. And that burden is not exclusively on me. It is the board's own general counsel raised these objections in its briefs and in its reply briefs, some of the exceptions. So I list all of the instances where all of my arguments were brought up during those briefs, except for one. And the one that was not brought up is the issue where the board interrupted the settlement process. This is not any kind of a settlement process. It's a settlement process where the employer agreed to a formal settlement where it was okay with admitting wrongdoing and following the judge's orders completely. And the board departed from that without explanation. And I did not preserve that by filing a motion to reconsider. But I have asked that this court look into this because of the circumstances surrounding this particular issue. So I think the claims that I did not preserve, my arguments are meritless and I have answered them all in my reply brief. The second point that I want to make in my remaining time is that when it comes to the the judge ruled on very, very details that there were four violations committed by the employer through their statements. And these violations were documented by witness statements, by literally an audio recording of the executive director's statements. This included instructing employees to communicate complaints to management orally before submitting complaints and writing, you know, don't write any more petitions, talk to me first. Threatening employees with unspecified reprisal because they engaged in protected concerted activity and the judge gets into detail on why there was this unspecified reprisal based on case law and the facts in this law, in this case. Equating protected concerted activity with that issue. And the last one is requesting us to snitch on each other, requesting employees to report to management, employees who are engaged in protected concerted activity. Your Honours, these statements were made before other witnesses or on a recorded audio tape that was played in the courtroom where the administrative law judge listened to. But even if all of these factually, actually, even if the board is right when it comes to the evidence itself, the fact that the board relied on one main rationale, which is that these activities were not covered by Section 7, that rationale contradicts with the Supreme Court and the board's own precedent. And if that rationale does not stand, the entire case does not stand. This is not just according to me. It's according to the board's own order. If the rationale does not stand, the entire case does not. All right. Nothing further? We will take the case under advisement. Thank you.
judges: Henderson, Rogers, Wilkins